IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-HC-02071-M

| | |
|---|---|
| DUREYLL LEVARIA SULLIVAN, | ) |
| Petitioner, | ) |
| v. | ) **ORDER** |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

This cause is before the court for consideration of respondent's motion to dismiss for failure to state a claim or, in the alternative, for summary judgment. Mot. [D.E. 25].

Procedural History:

On April 27, 2020, Dureyll Levaria Sullivan ("petitioner"), then an inmate at F.C.I. Butner, filed *pro se* in the United States District Court for the District of South Carolina a petition seeking a writ of habeas corpus under 28 U.S.C. § 2241. See Pet. [D.E. 1].

On April 30, 2020, the action was transferred to this court. See Order [D.E. 2].

On May 21, 2020, pursuant to an order of deficiency, Order [D.E. 5], petitioner filed an amended petition, and moved for leave to proceed without prepayment of fees. See [D.E. 6, 7].

On February 10, 2021, the court conducted its initial review, construed the petition as a request for *nunc pro tunc* designation, and allowed the action to proceed. Order [D.E. 15].

On April 29, 2021, respondent filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment, Mot. [D.E. 25], a memorandum in support, [D.E. 26], a statement of material facts, [D.E. 27], and an appendix, [D.E. 28]. Also, pursuant to Roseboro v.

Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about the pending motion, the response deadline, and the consequences of failing to respond. [D.E. 29].

Petitioner responded in opposition. [D.E. 30, 32].

### Background:

On April 30, 2007, petitioner was arrested by South Carolina state authorities for Robbery/Armed Robbery and Robbery while Armed. Resp't App., Ex. 1 [D.E. 28-1] at 1–2 (Anderson County Tenth Judicial Circuit Public Index). Also a criminal complaint in the United States District Court for the District of South Carolina charged petitioner with Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a),(d), and Possession of a Weapon in Furtherance of a Violent Crime, in violation of 18 U.S.C. § 924(c), and he was temporarily transferred from state to federal custody pursuant to a writ of habeas corpus *ad prosequendum* for criminal proceedings. See United States v. Sullivan, No. 8:07-cr-00553-HMH-2 (D.S.C. April 30, 2007), [D.E. 1, 2].

On May 8, 2007, an indictment charged petitioner with Armed Bank Robbery and aiding and abetting, in violation of 18 U.S.C. §§ 2, 2113(a),(d) (Count 1), and Possession of a Weapon in Furtherance of a Violent Crime and aiding and abetting, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A) (Count 2). Id., [D.E. 16]. Petitioner pleaded guilty to both counts. Id., [D.E. 45].

On September 17, 2007, petitioner was sentenced to consecutive terms of 37-months' as to Count 1 and 84-months' as to Count 2, totaling 121 months' imprisonment. Id., J. [D.E. 59]; Resp't App., Ex. 2 [D.E. 28-2] at 1–5. Petitioner then was returned to the primary custody of state authorities, and the federal judgment was filed as a detainer. See Resp't App., Ex. 3 [D.E. 28-3].

On December 2, 2008, the South Carolina state court sentenced petitioner to 15 years for Robbery/Armed Robbery, and 15 years for Robbery while Armed and ordered these two 15-year terms to run concurrent to each other and concurrent to petitioner's federal terms. See Resp't App.,

2

Ex. 4 [D.E. 28-4] (State Court Judgment). Petitioner then remained in the primary jurisdiction of the State of South Carolina until his parole on December 23, 2019, at which time the primary jurisdiction transferred to the federal government. See Resp't App., Ex. 5 [D.E. 28-5] at 1–3 (Federal Bureau of Prisons ("BOP") Sentence Monitoring Computation Data).

Arguments:

Petitioner's argument, distilled, is his entire federal sentence should be served concurrently with his state sentence and the BOP should effectuate a concurrent sentence by granting him a *nunc pro tunc* designation to the state facility where he served his state sentence. See [D.E. 1, 6].

Respondent argues that: 1) petitioner failed to exhaust administrative remedies; 2) the BOP properly computed petitioner's sentence; and 3) the BOP properly exercised its discretion in partially granting petitioner's request for *nunc pro tunc* designation. See Resp't Mem. [D.E. 26].

In response, petitioner argues that, as to exhaustion, he complained to F.C.I. Butner staff members about his federal sentence computation and followed staff advice to fill out an inmate request and file the instant action for *nunc pro tunc* designation. Pet'r's Resp. [D.E. 32] at 1–2. As to sentence computation, petitioner asserts he was "under the impression that [his] time (state/federal) . . . ran together," and, on the day he was sentenced, the state court gave him credit for the time served and ordered that his 15-year sentences run concurrently with his ten-year federal sentence. Id. at 2. Petitioner asserts: "The Government had more than enough time to correct my sentence." Id. at 3. Petitioner also contends, the "day after [petitioner's co-defendant] was sentenced to 10 state ran concurrent with his federal sentence [sic]," the U.S. Marshal "picked [his co-defendant] up and brought him back before the state court and told them if they [ ] wanted his time to be [run] concurrent to theirs that they should give him a sentence of time served. Which they did so [sic]." Id. Petitioner queries why the same wasn't done for him. Id.

3

Discussion:

Section 2241 empowers the court to grant habeas relief to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c).

The court first considers respondent's argument that petitioner failed to exhaust his administrative remedies.

> Prior to hearing a § 2241 petition, federal courts require exhaustion of alternative remedies, including administrative appeals. See e.g., Boumediene v. Bush, 553 U.S. 723, 793 (2008); Timms v. Johns, 627 F.3d 525, 531 (4th Cir. 2010). The exhaustion requirement is a prudential restraint, not a statutory requirement. Dragenice v. Ridge, 389 F.3d 92, 98 (4th Cir. 2004). It allows agencies to exercise autonomy and discretion and prevents premature judicial intervention. Darby v. Kemp, 957 F.2d 145, 147 (4th Cir. 1992), rev'd on other grounds sub nom. Darby v. Cisneros, 509 U.S. 137 (1993).

Rodriguez v. Ratledge, 715 F. App'x 261, 265 (4th Cir. 2017) (per curiam) (unpublished).

Successfully exhausting administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (internal citations and quotation marks omitted). "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Id. at 93. Failure to exhaust administrative remedies is an affirmative defense that a defendant must plead and prove. See Jones v. Bock, 549 U.S. 199, 216 (2007); Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017).

The BOP has a multi-tiered Administrative Remedy Program. See 28 C.F.R. §§ 542.10, et seq. An inmate first seeks to informally resolve his complaint by filing Form BP-8 and, if the matter cannot be resolved informally, the inmate must file a formal written "Administrative Remedy Request" (Form BP-9) within twenty days following the date on which the basis for the complaint occurred. 28 C.F.R. §§ 542.13, 542.14(a). An inmate then may appeal the decision to

4

the Regional Director within twenty days of the date of the Warden's BP-9 response by filing Form BP-10. 28 C.F.R. § 542.15. Finally, the inmate may appeal the BP-10 decision to the General Counsel within thirty days of the Regional Director's response by filing Form BP-11. Id. If the inmate does not receive a response from the Warden, Regional Director, or General Counsel within the allotted time frames, including extensions of time, the inmate may consider the absence of a response to be a denial and may then appeal to the next level. 28 C.F.R. § 542.18.

Although "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are," Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted), exhaustion is mandatory only if the grievance process is "available" to the prisoner, Ross v. Blake, 578 U.S. 632, 642 (2016). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. Prison grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 643–44 (citations omitted).

The record reflects that petitioner did not exhaust his administrative remedies for claims as to his sentence computation or *nunc pro tunc* designation. See Resp't App., Ex. 6, Kelly Forbes Decl., [D.E. 28-6] at ¶6 (declaring that, as of April 26, 2021, petitioner's sole administrative remedy request involved an appeal from an inmate disciplinary hearing). Further, although petitioner asserts that he took steps recommended by F.C.I. Butner staff to challenge his sentence computation, see Pet'r's Resp. [D.E. 32] at 1–2, petitioner does not argue, and the record does not

5

reflect, that BOP grievance procedure was "unavailable." Cf. Ross, 578 U.S. at 643–44; Moore, 517 F.3d at 725. Accordingly, because petitioner failed to exhaust administrative remedies before filing this petition, dismissal without prejudice is appropriate. See Rodriguez, 715 F. App'x at 265 ("Failure to exhaust administrative remedies typically results in dismissal without prejudice, in order to allow the refiling of an action once the administrative process is complete.").

Alternatively, even if petitioner had successfully exhausted his administrative remedies, his nevertheless fails to demonstrate that the BOP erred when it computed his sentence and partially granted his *nunc pro tunc* designation request.

The Attorney General, through the BOP, is responsible for administering federal criminal sentences. See United States v. Wilson, 503 U.S. 329, 335 (1992). Under § 3621(b), the BOP has discretion to designate, *nunc pro tunc*, a state facility for service of a federal sentence. See Mangum v. Hallembaek, 824 F.3d 98, 101 (4th Cir. 2016) ("Mangum I"). If the inmate is subject to both federal and state sentences, the BOP's *nunc pro tunc* designation can have the effect of running these federal and state sentences concurrently. Id. The BOP considers the following five factors to determine if designation is appropriate:

- (1) the resources of the facility contemplated;
- (2) the nature and circumstances of the offense;
- (3) the history and characteristics of the prisoner;
- (4) any statement by the court that imposed the sentence –
    - (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    - (B) recommending a type of penal or correctional facility as appropriate; and
- (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

6

Here, an April 7, 2021, *nunc pro tunc* review worksheet examined these five factors. Resp't App., Ex. 7 [D.E. 28-7]. The BOP found factor one irrelevant because petitioner then was at F.C.I. Butner. Id. at 1. As to factor two, the BOP noted the federal and state charges are related and the state sentencing court intended the state and federal sentences to run concurrently. Id. As to factor three, the BOP noted petitioner's criminal history and disciplinary infractions. Id. As to factor four, the BOP noted it "makes no presumption under 18 U.S.C. § 3584(a) as to whether the federal and state sentence run concurrently or consecutively." Id. (citing Mangum v. Hallembaek, 910 F.3d 770 (4th Cir. 2018) ("Mangum II")). In factor five, the BOP only cited 18 U.S.C. §924(c). Id. The BOP concluded, consistent with Setser v. United States, 566 U.S. 231 (2012), and Mangum II, petitioner's *nunc pro tunc* designation request would be partially granted, making "a retroactive designation pursuant to 18 U.S.C. § 3621(b), while maintaining the integrity of the mandatory consecutive 84-month count imposed under 18 U.S.C. § 924(c)." Id. at 2.

The BOP then recalculated petitioner's sentence, designating the State of South Carolina for the service of his 37-month term of imprisonment on Count 1. Resp't App., Ex. 5 [D.E. 28-5] (applying a federal sentence commencement date of Nov. 23, 2016). Now, with the application of good conduct time credits, petitioner's new projected release date is July 23, 2025. See id.

Petitioner's chief argument–that the BOP abused its discretion when it failed to designate the State of South Carolina for the service of his 84-month term of imprisonment for his § 924(c) conviction in Count 2–is wholly foreclosed. See United States v. Gonzales, 520 U.S. 1, 11 (1997) (holding the "plain language of 18 U.S.C. § 924(c) forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, whether state or federal."); see also Barnes v. Masters, 733 Fed. App'x. 93, 97 (4th Cir. 2018) (per curiam) (unpublished) (finding a federal inmate's sentence "could not be fully retroactively

7

concurrent" because the sentence for his § 924(c) conviction necessarily runs concurrent to any other state or federal sentence (citing 18 U.S.C. § 924(c)(1)(D)(ii); Gonzales, 520 U.S. at 11)); Richmond v. Bragg, No. 6:19-cv-3575, 2021 WL 1124873 (D.S.C. Mar. 24, 2021) (same).

After review, the court also discerns no clear error in the BOP's April 7, 2021, review of the five factors in 18 U.S.C. § 3621(b). Further, because the BOP used its independent judgment to weigh these factors, cf. Trowell v. Beeler, 135 F. App'x 590, 596 (4th Cir. 2005) (per curiam) (unpublished), the court applies the "presumption of legitimacy" to the BOP's determination, see Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004), and concludes the BOP did not abuse its discretion when it partially granted petitioner's *nunc pro tunc* designation request.

Although petitioner asserts that his co-defendant's sentence was different, Pet'r's Resp. [D.E. 32] at 3, the federal court sentenced the co-defendant to the same 121-month term on the same charges, but the state court instead sentenced the co-defendant to a 5-year term for possessing a weapon during a crime of violence. See United States v. Sullivan, No. 8:07-cr-00553-HMH-1 (D.S.C. Apr. 17, 2013), Op. and Order [D.E. 83] at 1. Such differences in petitioner's and the co-defendant's state-court charges and sentences are extraneous to resolution of this petition. See In re Wright, 826 F.3d 774, 778 (4th Cir. 2016) (distinguishing between § 2241 and § 2254 petitions).

To the extent petitioner instead argues that 1) his federal sentence began on the date of his federal conviction, or 2) he was in federal custody either a) from the date of his arrest by South Carolina state authorities, or b) from the date he was transported to federal court under a writ of habeas corpus *ad prosequendum*, such contentions also are incorrect. See 18 U.S.C. § 3585(a) (imprisonment "commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."); United States v. Evans, 159 F.3d 908, 911 (4th

8

Cir. 1998) ("A federal sentence does not commence until the Attorney General receives the defendant into [his] 'custody' for service of that sentence."); id. at 912 ("A federal sentence does not begin to run, however, when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum*. Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." (citations omitted)); see also United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005) ("[P]rimary jurisdiction over a person is generally determined by which [sovereign] first obtains custody of, or arrests, the person.").

Accordingly, the court concludes that BOP has applied all retroactive credit to which is petitioner is entitled, and he fails to demonstrate entitlement to habeas relief. See Carter v. Lynch, 429 F.2d 154, 157 (4th Cir. 1970).

Conclusion:

For the reasons discussed above, the court: GRANTS the motion to dismiss or, in the alternative, for summary judgment [D.E. 25]; DISMISSES WITHOUT PREJUDICE the petition [D.E. 1, 6] either for failure to exhaust or, in the alternative, because petitioner fails to demonstrate entitlement to habeas relief; DENIES a Certificate of Appealability, see 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); and DIRECTS the clerk to close the case.

SO ORDERED. This 2d day of March 2022.

RICHARD E. MYERS II
Chief United States District Judge

9

Case 5:20-hc-02071-M   Document 34   Filed 03/03/22   Page 9 of 9